UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Jose Angel Medina Garcia<br><br>Petitioner/ Plaintiff<br><br>V.<br><br>Pamela Bondi, Attorney General; Kristi Noem, Director of US Department of Homeland Security U.S. Citizenship and Immigration Services; Federal Bureau of Investigation; Todd Lyons, Acting Director of U.S. Immigration and Customs Enforcement<br><br>Respondents/Defendants | Civil Action No.<br><br><br><br>PLAINTIFF'S ORIGINAL COMPLAINT FOR VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT AND WRIT IN THE NATURE OF HABEAS CORPUS<br><br>A#: 206 571 913 |

**COMPLAINT FOR VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT AND WRIT IN THE NATURE OF HABEAS CORPUS**

This action is brought by the Petitioner, Jose Garcia against the Defendants for emotional distress, and lost wages for his wrongful continued detention while being in the United States lawfully with work authorization fully employed and taken against his will into custody. Further, peripherally to the violation the Petitioner is filing a Writ in the Nature of Habeas Corpus to have him brought back to Massachusetts where entirely all of the Defendant actions against the Plaintiff took place in violation of the administrative procedures act, (hereinafter referred to as the "APA" action) for which all witnesses relating to **all issues** are located, including, but not limited to government agents involved in the action, employer, family members, immigration attorney, and the USCIS Boston Asylum Officer, and Immigration and Officers from the

Immigration and Customs Office located in Boston, MA that covers all of New England that will be asked to testify are in the Commonwealth of Massachusetts **for no reason**. Therefore, to properly adjudicate the APA action, the Writ in the Nature of Habeas Corpus must be adjudicated along with said APA action and bring the Plaintiff to Massachusetts to properly testify along with the other witnesses, as well as put forth his case properly and be afforded his due process rights under the APA action.

PARTIES

Background: The Petitioner/Plaintiff, Jose Angel Medina Garcia (A#: 206 571 913), is a married father of three residing at 18 Jones Court, Lynn, MA 01902 with no criminal background, and no pending removal orders or issued Notices to Appear in any immigration proceedings, who entered the United States from Mexico and has affirmatively filed for (and has pending) an Asylum case with the Boston Office (see exhibit "A" evidence of pending I-589 Application for Asylum and Withholding of Removal with the Boston, MA office annexed hereto). Further, the Plaintiff has a valid employment authorization documentation (see exhibit "B" annexed hereto).

1. Federal Bureau of Investigation/ Defendant

2. The Respondent/ Defendant, Pamela Bondi, is being sued in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws, pursuant to **8 CFR section 264.5 (b)(7)**, and she possesses extensive discretionary powers to grant certain relief to aliens. The U.S. Citizenship and Immigration Service is an agency within the Department of Justice to whom the Attorney General's supervision.

3. The Respondents/Defendants, Department of Homeland Security and the U.S. Citizenship and Immigration Services are the agencies responsible for enforcing the Immigration and Nationality Act ("INA") and for adjudication the application filed by the Applicant. The Department of Homeland Security will be referred to hereinafter as the "DHS" and the U.S.

Citizenship and Immigration Services will be referred to as the "CIS"

4. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*

5. This action arises under the Constitution, the Immigration & Nationality Act 1952, as amended ("INA"), 8 USC §§ 1101 et seq., and the Administrative 17 the Procedure Act (the "APA"), 5 USC §§ et seq. Jurisdiction in this case is proper under 28 U.S.C. §2241(c), in that Petitioner is in the Respondents' custody under or by color of law the authority of the United States, and in violation of the Constitution or laws of the United States, as more fully set forth below.

6. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Under 8 U.S.C. § 1252(e)(2), this Court has habeas authority to determine whether Petitioner is a noncitizen; whether Petitioner was ordered removed under 8 U.S.C. § 1225(b)(1) or not; whether Petitioner is an asylee under 8 U.S.C. § 1158.

7. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All-Writs Act, 28 U.S.C. § 1651.

## FACTS

8. On June 27, 2001, Jose Angel Medina Garcia, at the age of 22, entered the United States illegally through the Nogales, Sonora border crossing. Immigration officials apprehended him, took his fingerprints and photos, and released him to return to Mexico. However, instead of returning to Mexico, Jose Angel Medina Garcia left the United States and then returned through the same border crossing. At this point, no one stopped him, and he traveled Boston, MA on July 4, 2001, over 24 years ago. Mr. Garcia was born on May 18, 18, 1979 and has three children. The first, David Medina, who is 25 years old and was born in Mexico on July 3, 2000, and currently living in Lynn, Massachusetts. The second child,

Sarahi Medina, a U.S. citizen born on October 11, 2004, and a third child, Angel Medina, who is also a U.S. citizen and was born on May 12, 2010. Bradley Mendez, although not his biological son, Bradley considers Jose Angel Medina Garcia his father since Bradley was one years old, when Jose Angel Medina Garcia came into his life as a father figure. Bradley is also a U.S. citizen.

9. On September 25, 2025, Jose Angel Medina Garcia was at the gym exercising in Lynn, MA. When he decided to leave on or about 7:58 p.m. four individuals for Immigration and Customs Enforcement (ICE) grabbed Mr. Garcia in the parking lot, after he had gotten into his automobile, and instructed him that if he did not go with them, they were going to break his window. All of this was heard by his wife who was on the phone at time with him and will testify to the facts (and who also resides in Lynn, MA). The wife heard her husband on the telephone explaining that he was legal and had a work permit and wanted to show them, but the phone was turned off. Jose Angel Medina Garcia was put in hand cuffs and taken away, leaving the wife to take care of the entire family alone, and worrying about her husband.

10. Plaintiff Jose Angel Medina Garcia ("Plaintiff") remains in El Paso, ICE custody in Texas despite his pending asylum case, for which he, filed affirmatively.

11. Plaintiff is not in removal proceedings and is likely to be tortured if deported to his home country.

12. Immigration and Customs Enforcement (ICE) refuses to release the Plaintiff, after wrongfully taking him from Massachusetts, away from his entire life to a place needlessly almost 2,000 miles away for which he has no contacts and way obtaining representation, and nothing related to his case even occurred;

## VENUE

13. Although, the standard rule for habeas petitions falls under the "district of confinement" rule, do to the fact that the present Habeas being brought secondary to the APA action, the

Plaintiff is requesting that by virtue **of long arm** jurisdiction, the Plaintiff requests that Massachusetts maintain venue. "The important feet to be observed in regard to the mode of procedure' upon this writ is, that it is directed to, and served upon, not the person confined, but his jailer. It does not reach the former except through the latter. The officer or person who serves it does not unbar the prison doors, and set the prisoner free, but the court relieves him by compelling the oppressor to release his constraint, the whole force of the writ is spent upon the respondent In the Matter of Jackson 15 Mich. 417,439-40 Braden v. 30th Jud. Or. Ct. of Ky,410 U.S.484,495(1973)- So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction. Braden, 410 U.S. at 495.

14. Venue in habeas petitions ordinarily is governed by traditional venue considerations, including: (1) where the material events occurred; (2) where records and witnesses pertinent to the claim are likely to be found..."

15. In addition Venue is proper in this District because Respondents are officers, employees, or agencies of the United States and Plaintiff resides in this District, as stated a substantial part of the events or omissions giving rise to his claims occurred in this District 28 U.S.C. § 1391(e).

16. Venue and jurisdiction are generally in the federal district where the petitioner is being detained, but there are exceptions: **1.** *Jurisdiction determined at the time petition is filed.* Jurisdiction of the court is determined at the time the habeas petition is filed. If the court has jurisdiction initially, jurisdiction is not lost simply because the petitioner is transferred out of district after the lawsuit is filed, which has been decided in Zegarra-Gomez v. INS, 314 F.3d 1124, 1125 (9th Cir. 2003) (continuing jurisdiction after deportation; "the fact of his deportation does not render the habeas petition moot where there are collateral

consequences arising from the deportation that create concrete legal disadvantages"), and It has been determined in several circuits, especially now with "shell game" that Immigration and Customs Enforcement plays with detainees and constantly changing drastically the jurisdiction of where the detainee is being held that gives both the detainee and the family no chance at time to even "catch up" with the where the detainee is being held in order to file a habeas in accordance with <u>Zegarra-Gomez v. INS,</u> Several courts have adopted in the name of justice allow the AG or the DHS secretary to be named as the proper respondent, traditional venue considerations will determine venue (and to that extent, prevent forum shopping). Traditional venue considerations for determining where a habeas petition should be filed include: (1) where the material events occurred; (2) where the records and to the respondent and petitioner *see* <u>Braden v. 30th Jud. Cir. Ct. of Ky.</u>, 410 U.S. 4S4,493-94 (1973). See also <u>Henderson v. INS</u>, 157 F.3d 106,127-28 (2d Cir. 1998) ("[T]here is reason to think that strict application of "traditional principles of venue in alien habeas cases might adequately control the forum shopping in which aliens might try to engage were the Attorney General to be designated an appropriate respondent"). Thus, if a noncitizen is transferred out of their home jurisdiction to another jurisdiction with which they have no contact, it may be possible to file a habeas petition in the home jurisdiction, see e.g. <u>Wilson v. Gonzales</u>, 471 F3.d 111,117 (2d Cir. 2006) ("[T]o transfer the appeal to the Fifth Circuit for the appeal process to begin a new, in and of itself would be inconvenient."); <u>Farez-Espinoza v. Chertoff,</u> 600 F. SUPP. 2d 488,495 (SD.N.Y. 2009) (applying the "traditional principles of venue" to find that the court has habeas jurisdiction, even though the petitioner was being held in another district).

17. This actual cause of the action has an accompanying APA action for which this case does have jurisdiction based on the arbitrary and capricious actions of ICE taking a person legally in the US and for no reason placing them in custody and separating them from their family out of state for no apparent reason. Further, pursuant to J.G. Warden, Irwin County

Detention Center, 501 F. Supp. 3d 1331, 1342 (M.D. Ga. 2020) ( (ordering that the Government must provide petitioner with a bond hearing within 14 days or release petitioner immediately), which they have failed to do.

"Generally, the proper venue for a habeas petition is the jurisdiction where the petitioner is confined (the "district of confinement" rule). However, there is no absolute requirement that a habeas petition be filed in the jurisdiction where the petitioner is confined. IF the district court has jurisdiction over the petitioner's custodian-e.g., by virtue of its long-arm jurisdiction—then the case can go forward. As the Supreme Court explained: So long as the custodian can be reached by service of process, the court can issue a writ "within its jurisdiction" requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction Braden, 410 U.S. at 495. Venue in habeas petitions ordinarily is governed by traditional venue considerations, including: (1) where the material events occurred; (2) where records and witnesses pertinent to the claim are likely to be found; and (3) the convenience of the forum to the respondent and the petitioner Id. At 493-94 Section § 1252(b)(2) requires that a petition challenging a final order of removal must be filed in the venue where the IJ completed the proceedings." However, in the present case there are no pleadings to be challenged, making that point moot. Further, as decided in The Lazaro Maldonado Bautista District Court, that granted a nationwide class certification and partial summary judgment on behalf of the class rejecting Matter of Yajure Hurtado and the predecessor ICE policy applying 235(b)(2)(A) detention without bond to all persons who entered without admission/inspection on November 25, 2025. This judgment declares that class members across the country now have a binding judgment declaring if they, as the plaintiff is in the present case, are detained, are entitled to be considered for release on bond at the very minimum. The class certification order expressly states: *"When considering this*

*determination with the MSJ Order, the Court extends the same declaratory relief granted to Petitioners to the Bond Eligible Class as a whole."* (see p.14 of class cert order).

*The Bond Eligible Class is nationwide and encompasses:*

*All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.*

This certification of the warrantless detention without a bond hearing, nor reason for detention, is further evidence of the violation of the plaintiff's Due Process Rights and giving rise to this APA action for which this honorable court has both venue and jurisdiction due to violation occurring in Lynn, MA and all of the aforementioned reasons stated above.

18. Warrantless arrests have been recently acknowledged as occurring and deemed to be a violation of due process by Homeland Security itself admonishing ICE for their arbitrary and capricious nature giving rise to this action giving rise to this APA action and venue in this case, therefore the habeas is warranted as all of the actions sounding the warrantless arrest, along with witnesses were, and are in the Commonwealth of Massachusetts. Therefore, the venue of the habeas has also been formed in the Commonwealth of Massachusetts to have the Plaintiff be able to properly and effectively prosecute his claim as well as testify.

19. Further, in the absence of an order or removal, or Notice to Appear, or any charging document, continued detention is not justified. ICE's own prosecutorial discretion policies for direct detention should not be used where release is appropriate.

20. Continued confinement causes irreparable harm, loss of ability to work, disruptions to family support, and denial of access to legal counsel and evidence.

21. Also, the Plaintiff is housed in an ICE Detention Center. The Department of Homeland Even states on it's website that "**Detention is non-punitive. Once an alien is transferred to ICE custody, the agency makes a custody determination. ICE uses its limited detention resources to detain aliens to secure their presence for immigration proceedings or removal from the United States — as well as those that are subject to mandatory detention, as outlined by the Immigration and Nationality Act, or those that ICE determines are a public safety or flight risk during the custody determination process. When an alien is not subject to mandatory detention or is not deemed to be a public safety or flight risk, ICE exercises its discretion in making custody determinations to release aliens with conditions. These custody decisions are made on a case-by-case basis and after considering the totality of circumstances — primarily considering risk of flight, national security threat and risk to public safety. ICE also takes other factors into consideration — including when an alien has a serious medical condition, is the primary caregiver of minor children, or other humanitarian considerations.**" It also list the center as an "**Immigration detention center (Administrative)" with "Custodial Authority: Immigration and Customs Enforcement [and] Management: U.S. Immigration and Customs Enforcement (Governmental).**" Therefore, due to the fact that ICE is in FULL control over the Plaintiff and NOT the local authorities is Texas, ie. a local prison, venue falls wherever ICE is located. ICE is located and can adequately defend their position in this case in Massachusetts as well as every state in the United States. There is not even a prison, nor "state warden" listed as being involved in this detention.

### REQUIREMENTS OF 28 U.S.C. § 2243

22. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days,

is allowed." *Id.* (emphasis added).

23. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." <u>Fay v. Noia</u>, 372 U.S. 391, 400 (1963) (emphasis added).

24. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." <u>Fay v. Noia</u>, 372 U.S. 391, 400 (1963). 12. Petitioner is "in custody" for the purpose of § 2241 because Petitioner is arrested and detained by Respondents.

## JURISDICTION

25. Jurisdiction in this case is proper under 28 U.S.C. sections 1331 and 1361, 5 U.S.C. section 701 et seq., and 28 U.S.C. section 2201 et seq. Relief is requested pursuant to said statutes.

26. This Court has jurisdiction pursuant to 28 U.S.C. § 2241 (the general grant of habeas authority to the district court); Art. I § 9, cl. 2 of the U.S. Constitution ("Suspension Clause"); 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 2201, 2202 (Declaratory Judgment Act).

27. Federal district courts have jurisdiction to hear habeas claims by non-citizens challenging the lawfulness of their detention. See, e.g., <u>Zadvydas,</u> 533 U.S. at 687. Case 1:23-cv-01151 Document 1 Filed 08/29/23 Page 2 of 29 Page ID# 23 Federal courts also have federal question jurisdiction, **through the APA**, to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). APA claims are cognizable on habeas. 5 U.S.C. § 703 (providing that judicial review of agency action under the APA may proceed by "any applicable form of

legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus"). The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Respondents' continued detention of Petitioner for weeks, with lawfully in the US, and not in removal proceedings has adversely and severely affected Petitioner's liberty and freedom.

28. See Accardi v. Shaughnessy, 347 U.S. 260 (1954). Federal courts also have federal question jurisdiction, through the APA, to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). APA claims are cognizable on habeas. 5 U.S.C. § 703 (providing that judicial review of agency action under the APA may proceed by "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus"). The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Respondents' continued detention of Petitioner up to and past the 90-day removal period has adversely and severely affected Petitioner's liberty and freedom.

29. Venue is generally in the federal district where the petitioner is being detained, but there are exceptions: **1.** *Jurisdiction determined at the time petition is filed.* Jurisdiction of the court is determined at the time the habeas petition is filed. If the court has jurisdiction initially, jurisdiction is not lost simply because the petitioner is transferred out of district after the lawsuit is filed, which has been decided in Zegarra-Gomez v. INS, 314 F.3d 1124, 1125 (9th Cir. 2003) (continuing jurisdiction after deportation; "the fact of his deportation does not render the habeas petition moot where there are collateral consequences arising from the deportation that create concrete legal disadvantages"), and It has been determined in several circuits, especially now with "shell game" that Immigration and Customs Enforcement plays with detainees and constantly changing drastically the jurisdiction of where the detainee is being held that gives both the detainee and the family no chance at time to even "catch up"

with the where the detainee is being held in order to file a habeas in accordance with Zegarra-Gomez v. INS, Several courts have adopted in the name of justice allow the AG or the DHS secretary to be named as the proper respondent, traditional venue considerations will determine venue (and to that extent, prevent forum shopping). Traditional venue considerations for determining where a habeas petition should be filed include: (1) where the material events occurred; (2) where the records and to the respondent and petitioner *see Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 4S4,493-94 (1973). See also *Henderson v. INS*, 157 F.3d 106,127-28 (2d Cir. 1998) ("[T]here is reason to think that strict application of "traditional principles of venue in alien habeas cases might adequately control the forum shopping in which aliens might try to engage were the Attorney General to be designated an appropriate respondent"). Thus, if a noncitizen is transferred out of their home jurisdiction to another jurisdiction with which they have no contact, it may be possible to file a habeas petition in the home jurisdiction, see e.g. *Wilson v. Gonzales*, 471 F3.d 111,117 (2d Cir. 2006) ("[T]o transfer the appeal to the Fifth Circuit for the appeal process to begin a new, in and of itself would be inconvenient."); *Farez-Espinoza v. Chertoff*, 600 F. SUPP. 2d 488,495 (SD.N.Y. 2009) (applying the "traditional principles of venue" to find that the court has habeas jurisdiction, even though the petitioner was being held in another district).

30. This actual cause of the action has an accompanying APA action for which this case does have jurisdiction based on the arbitrary and capricious actions of ICE taking a person legally in the US and for no reason placing them in custody and separating them from their family out of state for no apparent reason. Further, pursuant to J.G. Warden, Irwin County Detention Center, 501 F. Supp. 3d 1331, 1342 (M.D. Ga. 2020) ( (ordering that the Government must provide petitioner with a bond hearing within 14 days or release petitioner immediately), which they have failed to do.

LEGAL FRAMEWORK

<u>ICE'S CONTINUED DETENTION OF MR GARCIA, WITHOUT REVIEWING HIS CUSTODY UNDER ICE POLICY VIOLATES THE APA AND DUE PROCESS.</u>

31. Under the Accardi doctrine, which originated in the context of an immigration case and has been developed through subsequent immigration case law, agencies are bound to follow their own rules that affect the fundamental rights of individuals, even self-imposed policies and processes that limit otherwise discretionary decisions. See <u>Accardi</u>, 347 U.S. at 226 (holding that BIA must follow its own regulations in its exercise of discretion); <u>Morton v. Ruiz</u>, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required.").

32. The requirement that an agency follow its own policies is not "limited to rules attaining the status of formal regulations." <u>Montilla v. INS</u>, 926 F.2d 162, 167 (2d Cir. 1991). Even an unpublished policy binds the agency if "an examination of the provision's language, its context, and any available extrinsic evidence" supports the conclusion that it is "mandatory rather than merely precatory." <u>Doe v. Hampton</u>, 566 F.2d 265, 281 (D.C. Cir. 1977); see also <u>Morton</u>, 415 U.S. at 235–36 (applying Accardi to violation of internal agency manual); <u>U.S. v. Heffner</u>, 420 F.2d 809, 813 (4th Cir. 1969) ("Nor does it matter that these IRS instructions to Special Agents were not promulgated in something formally labeled a 'Regulation' . . .").

33. When agencies fail to adhere to their own policies as required by Accardi, courts typically frame the violation as arbitrary, capricious, and contrary to law under the APA, see <u>Damus v. Nielson</u>, 313 F. Supp. 3d 317, 337 (D.D.C. 2018) ("It is clear, moreover, that [Accardi] claims may arise under the APA"), or as a due process violation, see <u>Sameena, Inc. v. United States Air Force</u>, 147 F.3d 1148, 1153 (9th Cir. 1998) ("An agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and

consequently may result in a violation of an individual's constitutional right to due process.") (internal quotations omitted).

34. Prejudice is generally presumed when an agency violates its own policy. See Montilla, 926 F.2d at 167 ("We hold that an alien claiming the INS has failed to adhere to its own regulations . . . is not required to make a showing of prejudice before he is entitled to relief. All that need be shown is that the subject regulations were for the alien's benefit and that the INS failed to adhere to them."); Heffner, 420 F.2d at 813 ("The Accardi doctrine furthermore requires reversal irrespective of whether a new trial will produce the same verdict."). To remedy an Accardi violation, a court may direct the agency to properly apply its policy, see Damus, 313 F. Supp. 3d at 343 ("[T]his Court is simply ordering that Defendants do what they already admit is required."), or a court may apply the policy itself and order relief consistent with the policy. See Jimenez v. Cronen, 317 F. Supp. 3d 626, 657 (D. Mass. 2018) (scheduling bail hearing to review petitioners' custody under ICE's standards because "it would be particularly unfair to require that petitioners remain detained . . . while ICE attempts to remedy its failure"). ICE's long-standing policy (hereinafter "the Policy") is to release non-citizens immediately following a grant of withholding or CAT relief absent exceptional circumstances. ("In general, it is ICE policy to favor the release [non-citizens] who have been granted protection by an immigration judge, absent exceptional concerns . . ."); id. at 4 ("Pursuant to longstanding policy, absent exceptional circumstances . . . noncitizens granted asylum, withholding of removal, or CAT protection by an immigration judge should be released . . .") (emphasis added). The Policy specifically instructs the local ICE field office to make an individualized determination whether to keep a non-citizen detained based on exceptional circumstances. See id. at 3 ("[T]he Field Office Director must approve any decision to keep a [non-citizen] who received a grant of [asylum, withholding, or CAT relief] in custody."). The Policy constitutes ICE's interpretation of the statute and regulations governing post-removal order detention. See 8 U.S.C. § 1231; 8 C.F.R. §§ 241.4,

241.13, 241.14. ICE has reasonably concluded that 8 U.S.C. § 1231(a)(2) does not require the detention of non-citizens granted withholding or CAT relief for the entirety of the 90-day removal period and that ICE "has the authority to consider the release of such [non-citizens] during the removal period." Furthermore, ICE later stated that the release policy established in 2004 "applies at all times following a grant of protection, including during any appellate proceedings and throughout the removal period," thereby explicitly extending the Policy to non-citizens with final removal orders who were granted withholding or CAT relief. Id. at 3. Such an application of the Policy is consistent with the broad discretion afforded to ICE by the statute and regulations governing post-removal order detention and is a reasonable interpretation of the ambiguities in that framework. Neither the statute nor regulations specifically contradict the Policy,10 and the regulatory language suggests that the standard custody review 8 U.S.C. § 1231(a)(2) does not apply to Mr. Jose Angel Medina Garcia because HE IS NOT EVEN IN ANY FORM OF REMOVAL PROCEDING where the 90 day detention rule, 8 U.S.C. § 1231(a)(2) ("Under no circumstance during the removal period shall [ICE] release a [non-citizen] procedures for non-citizens with final removal orders do not apply to non-citizens like Petitioner who have been detained for 90 days or more after being granted withholding or CAT and lack a connection to an alternative country).

35. Therefore, § 1231(a)(2) **would not preclude his release because he has not been charged as removable on the grounds described therein** [emphasis added]. Further, neither does 8 C.F.R. § 241.4(b)(4) "The custody review procedures in this section do not apply after the Service has made a determination, under the procedures provided in 8 CFR 241.13, that there is no significant likelihood that [noncitizen] under a final order of removal can be removed in the reasonably foreseeable future." In the present case, there are no "final orders" to be received. The Policy and its application to individuals with final grants of withholding or CAT relief are thus entitled to deference. See Kisor v. Wilkie, 139 S. Ct. 2400, 2408 (2019) ("This Court has often deferred to agencies' reasonable readings of genuinely ambiguous

regulations. We call that practice Auer deference . . ."); Auer v. Robbins, 519 U.S. 452 (1997) (deferring to Labor Secretary's reasonable interpretation of overtime pay regulations); Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984) (holding that courts should defer to agencies' reasonable interpretations of ambiguous statutes). The Policy is precisely the type of rule ICE is obligated to follow under Accardi. In Damus, the U.S. District Court for the District of Columbia found that a similarly styled ICE directive from 2009 laying out "procedures ICE must undertake to determine whether a given asylum-seeker should be granted parole" fell "squarely within the ambit of those agency actions to which the [Accardi] doctrine may attach," in part because it "establish[ed] a set of minimum protections for those seeking asylum" and "was intended—at least in part—to benefit asylumseekers navigating the parole process." 313 F. Supp. 3d at 324, 337-38; see also Pasquini v. Morris, 700 F.2d 658, 663 n.1 (11th Cir. 1983) ("Although the [INS] internal operating instruction confers who has been founded inadmissible [based on certain criminal or terrorism grounds] or deportable [based on similar grounds]). No substantive rights on the [noncitizen]-applicant, it does confer the procedural right to be considered for such status upon application."). Similarly, the Policy here establishes procedures for reviewing the custody of non-citizens who are granted immigration relief and is clearly intended, at least in part, to benefit those non-citizens.

36. ICE has clearly flouted ICE's national policy with respect to Petitioner's detention, in violation of Accardi. The available evidence demonstrates that ICE is automatically detaining every non-citizen filing for asylum or CAT relief, including Petitioner, for extended periods of time away from their families, without any for of review without regard to the Policy's requirements. Only after ICE denies release based on these factors does the case transfer to ICE HQ to consider the likelihood of removal under § 241.13. At no point does it appear that ICE is conducting an individualized review under the "exceptional circumstances" standard as required by the Policy.

COUNT I

## ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A)

37. Petitioner realleges and incorporates by reference the paragraphs above.

38. Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

39. ICE has deviated from its own policy in continuing to detain Petitioner after he was granted immigration relief, without determining whether exceptional circumstances warrant his continued detention. This is arbitrary, capricious, and contrary to law in violation of the APA.

40. As a remedy, this Court should conduct its own review of Petitioner's custody or, at least, order ICE to review Petitioner's custody under the standard articulated in ICE policy.

41. In <u>Escobar Molina v. Dep't of Homeland Security, District Court for the District of Columbia</u>, decided December 2, 2025 (all of the individuals were similarly from either Spanish countries with pending asylum cases [similar to the Plaintiff] or present under Temporary protected status, where they were needlessly detained. All of the individuals, as stated, have very apparent similarities and have been targeted on the basis for the exact same reason as the Plaintiff in the present case, which is arbitrary and capricious, without any form of probable cause, and as similarly held in <u>Escobar Molina v. Dep't of Homeland Security, District Court for the District of Columbia</u> U.S. District Judge Beryl Howell stated in her ruling that the law only allows arrests without a warrant when immigration officers have probable cause indicating that someone is in the country illegally and likely to escape "Put simply, immigration enforcement officers may conduct a warrantless civil immigration arrest only if they have probable cause to believe that a person is both in the United States unlawfully and an escape risk." In the present case the Plaintiff is a working husband and father, legally with documentation and a pending case. There is not a scintilla of a reason for him to be "an escape risk." The Plaintiff should be brought back to Massachusetts to be able

to testify to these facts and that this warrantless abduction of him was without any probable cause, a violation of his Due Process Rights, caused him severe and needless hardship and pain and creating the cause of this APA action.

## COUNT II

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

42. Petitioner realleges and incorporates by reference the paragraphs above.

43. ICE has violated Petitioner's due process rights by denying him an individualized custody review to which he is entitled under ICE policy.

44. As a remedy, this Court should conduct its own review of Petitioner's custody or, at least, order ICE to review Petitioner's custody under the standard articulated in ICE policy.

PRAYER FOR RELIEF

**WHEREFORE**, Petitioner respectfully request that this Court:

a. Assume jurisdiction over this matter;

b. Declare that Petitioner's continued detention violates the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(6); the Administrative Procedure Act, 5 U.S.C. § 706(2)(A); and/or the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

c. Order Petitioner be brought back to Boston, Ma for immediate release, or at a minimum be brought back and granted a bail hearing in accordance with the national Lazaro Maldonado *Bautista holding to testify as to the violations, and actions that have given rise to this action*;

d. Alternatively, review Petitioner's custody under the standard articulated in ICE policy, or order ICE to review Petitioner's custody accordingly.

e. Grant any other further relief this Court deems just and proper.

Respectfully submitted,

_____
Seth D. Miller, Esquire
Attorney for Plaintiff
Miller & Associates, P.C.
100 Copeland Drive, Suite 100
Mansfield, MA 02048
(508) 339-1155
(508) 339-1255 facsimile
seth@millerandassociateslaw.com
(BBO# 629773)

Dated: December 1, 2025

VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242

I am submitting this verification on behalf of the Petitioner because I am the attorney for Petitioner. I or my co-counsel have discussed with the Petitioner the events described in this Petition. Based on those discussions, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: December 1, 2025

Respectfully submitted,

_____
Seth D. Miller, Esquire
Counsel for Petitioner

**CERTIFICATE OF SERVICE**

I, Seth D. Miller, hereby certify that I have served a copy of this document electronically, upon:

U.S. Department of Homeland Security
Immigration and Customs Enforcement
Office of the District Counsel
JFK Federal Building- Rm. 425
Government Center
Boston, MA 02203

U.S. Citizenship and Immigration Services
JFK Building- Room E-160
Government Center
Boston, MA 02203
Attn.: Denis Riordan, District Director

U.S. Attorney's Office
U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

Attorney General Pamela Bondi
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

Federal Bureau of Investigation
One Center Plaza
Suite 600
Boston, MA 02108

Immigration and Customs Enforcement
El Paso Service Processing Center
8915 Montana Avenue
El Paso, TX 79925
United States